**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Hameed Abdulhussain,<br><br>          Plaintiff,<br><br>v.<br><br>Amalgamated Transit Union Local #1433,<br><br>          Defendant. | No. CV-23-02104-PHX-SHD<br><br>**ORDER** |

Defendant Amalgamated Transit Union Local #1433 ("the Union") moves to dismiss Plaintiff Hameed Abdulhussain's First Amended Complaint ("FAC") under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. 41.)  For the reasons stated below, the motion will be **granted in part** and **denied in part**.[1]

**I.   BACKGROUND**

On July 22, 2021, Abdulhussain, was fired from his job as a driver for MV Public Transportation ("MV Public"). (Doc. 36 ¶¶ 1, 42.)[2] Abdulhussain, who is Muslim, alleges that he was fired without just cause, and that the Union, which was to represent him in disputes with his employer pursuant to a Collective Bargaining Agreement, (1) failed to file grievances on his behalf; (2) violated the duty of fair representation by delaying arbitration and inadequately presenting his case in arbitration; and (3) discriminated against

---

[1] The parties did not request oral argument, so the motion is decided without a hearing.  *See* LRCiv 7.2(f).

[2] The FAC duplicates some paragraph numbers. Where necessary, page numbers are provided for clarity.

him on account of his religion or national origin in violation of Title VII of the Civil Rights Act. (Doc. 36 ¶ 48.)

Abdulhussain's trouble with his employer began in August of 2020, when he requested "to cash out his 160 hours of vacation hours" accrued over his "10 years of service." (Doc. 36 ¶¶ 9, 27.) MV Public denied the request, offering to pay Abdulhussain for only 80 hours, which they later increased to 95 hours. (*Id.* ¶¶ 28–29.) Abdulhussain alleges that the Union "failed to act" in response to his complaints about his vacation hours. (*See id.* ¶ 9.)

In March 2021, Abdulhussain's supervisor "stopped [him] at the entrance" of MV Public to "check the van for damage." (*Id.* ¶ 31.) Another employee, E.G., asked Abdulhussain why he was late. (*Id.*) E.G. did not question another driver who arrived at the same time as Abdulhussain but was not Muslim. (*Id.*) The next day, Abdulhussain "made a complaint about" E.G.'s conduct. (*Id.*) He was informed that "disciplinary action would be taken." (*Id.* ¶ 32.)

For the next three months, E.G. "continued to discriminate and retaliate against" Abdulhussain. (*Id.* ¶ 33.) Abdulhussain alleges that E.G. "adjusted his time cards incorrectly, harassed him before and after his shifts, assigned him difficult routes and passengers, and filed false complaints to management about him." (*Id.*) Although he "confronted the HR representative about the false claims," "no response was given." (*Id.*)

On July 1, 2021, MV Public placed Abdulhussain on administrative leave "based on the false accusations by" other employees. (*Id.* ¶ 37.) "Despite several complaints against E.G.," Abdulhussain alleges that the Union "never stepped up to protect [him,] and never forced [MV Public] to do so." (*Id.* ¶ 37.) MV Public terminated Abdulhussain on July 22, 2021, after "no hearing, no union representation, nothing in writing and no paid leave." (*Id.* ¶ 42.) When he was fired, Abdulhussain "again asked about his vacation pay." (*Id.* ¶ 37.)

The FAC contains contradictory allegations about whether the Union filed grievances on his behalf. In some instances, Abdulhussain alleges that the Union failed to

file grievances and initiate arbitration on his behalf. (*See id.* ¶ 20 ("Defendant acted discriminatorily when it inexplicably failed to pursue arbitration for Plaintiff"); *id.* at 5 ¶ 15 ("Defendant was to file three grievances . . . . It failed to do so.").) In others, the FAC alleges the Union filed grievances on his behalf and represented him in arbitration proceedings. (*See id.* ¶ 16 (alleging Abdulhussain "asked Defendant to file the grievances and it filed one on July 27, 2021"); *id.* at 4 ¶ 15 (alleging that the Union failed to present evidence, witnesses, and arguments "at the arbitration").)

On October 10, 2023—over two years after he was fired, and three years after he alleges the Union first "failed to act,"—Abdulhussain brought this suit against the Union for breach of the duty of fair representation under the Labor Management Relations Act ("LMRA"), and breach of contract under Arizona state law.[3] (Doc. 1.)

The Union moved to dismiss Abdulhussain's Complaint for failure to state a claim because his LMRA claim was untimely, and his breach of contract claim was preempted by the LRMA. (Doc. 23 at 2, 9.) The Court ruled from the bench at oral argument and granted the Union's motion on both counts. (Doc. 32 (order); Doc. 37 at 23–24 (transcript of oral argument).) He noted that pursuant to *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151 (1983), LRMA claims must be filed within six-months of their accrual date. (Doc. 37 at 23–24.) Because the Complaint alleged that the Union failed to file grievances and initiate arbitration in 2020 and 2021, they were untimely. (*Id.*) The Court further found that Abdulhussain's state law claim was preempted. (*Id.* at 23.) The Court thus dismissed both claims with prejudice but granted Abdulhussain's request for leave to amend his Complaint to assert a Title VII claim. (Doc. 32; Doc. 37 at 24–25.)

During oral argument on the Union's first motion to dismiss, it became apparent that the Union was, in fact, representing Abdulhussain in arbitration against MV Public. (Doc. 37 at 15, 22.) The parties assured the Court that the Complaint did not implicate the ongoing arbitration proceedings, but related only to the Union's failure to file grievances. (*Id.* at 22.)

---

[3] Abdulhussain is pursuing a separate suit in this Court against MV Public directly. *See Abdulhussain v. MV Public Transportation Inc.*, No. 2:22-cv-01458-SMB.

- 3 -

Abdulhussain timely filed his FAC on December 18, 2024. (Doc. 36.) In the FAC, Abdulhussain asserts many of the same factual allegations as his original Complaint. (*Compare id.*, *with* Doc. 1.) But Abdulhussain adds several critical facts. First, he alleges that he filed a complaint with the Equal Employment Opportunity Commission ("EEOC") on April 12, 2022, and that he received a notice of his right to sue from the EEOC on July 14, 2023. (Doc. 36 ¶ 7.) Although he did not attach the right-to-sue letter to the FAC, he attached it to his response to the motion to dismiss the FAC. (Doc. 46 at 8–11.) Second, Abdulhussain makes several new allegations against the Union, all of which concern the Union's representation of Abdulhussain in arbitration proceedings. (*See e.g.*, Doc. 36 at 4 ¶ 15 (alleging that "[i]n the arbitration," the Union "did not show the arbitrator that Plaintiff was written up untruthfully" and "did not use the transcript of the deposition of [a particular employee]" and "never made any objection" to MV Public's "five witnesses").)

The Union again moved to dismiss Abdulhussain's claims. (Doc. 41.) It argued first that any LMRA claim related to arbitration is premature because arbitration is ongoing. (*Id.* at 2–4.) The Union also moved to dismiss Abdulhussain's Title VII claim as barred by the statute of limitations, which requires that suits be filed within 90 days of receipt of the right-to-sue letter. (*Id.* at 4–6.) Abdulhussain responded, (Doc. 46), and the Union replied, (Doc. 47).

On August 19, 2025, the Court ordered the parties to file a joint status report indicating the status of arbitration and, if concluded, its outcome. (Doc. 48.) According to the parties' individual status reports, (Docs. 49, 50), a four-day arbitration hearing was held in late February 2025. (Doc. 49 at 1.) The deadline for submission of post-hearing briefs is set for October 1, 2025, and the Union "anticipates the Arbitrator will issue the decision within 60 days" of the October 1 deadline. (*Id.*)

## II.   LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true" and construed in a light most favorable to the plaintiff, "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation

modified). A claim is plausible if the plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In making this determination, legal conclusions are not accepted as true, nor are "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" considered. *Id.*; *see also id.* ("Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." (citation modified)). That said, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need *detailed* factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (emphasis added). A "well-pleaded complaint may proceed even if . . . actual proof of those facts is improbable, and [ ] a recovery is very remote and unlikely." *Id.* at 556 (citation modified). Pro se filings must be construed "liberally when evaluating them under *Iqbal*." *Jackson v. Barnes*, 749 F.3d 755, 763–64 (9th Cir. 2014).

Further, "[a] motion to dismiss based on the running of the statute of limitations" may only be granted "if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled." *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206 (9th Cir. 1995) (quotation marks omitted). Accordingly, "a complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim." *Id.* at 1207.

**III. DISCUSSION**

Though not styled as such in its briefing, the Union raises two challenges to Abdulhussain's FAC: first, in arguing that Abdulhussain's claims are premature, the Union implicates subject matter jurisdiction under Rule 12(b)(1); and second, in arguing Abdulhussain's Title VII claims are time-barred, the Union asserts a statute of limitations defense, which is "properly brought under Rule 12(b)(6)." *Ranch Realty, Inc. v. DC Ranch Realty, LLC*, 614 F. Supp. 2d 983, 987 (D. Ariz. 2007). Each argument is addressed in turn.

### A. Ripeness

The subject matter jurisdiction of federal courts extends only to "cases" and "controversies." U.S. Const. art. III, § 2. "Ripeness is one of the justiciability doctrines [courts] use to determine whether a case presents a live case or controversy." *50 Exch. Terrace LLC v. Mount Vernon Specialty Ins. Co.*, 129 F.4th 1186, 1187 (9th Cir. 2025) (quotation marks omitted). "For a case to be ripe, it must present issues that are 'definite and concrete, not hypothetical or abstract.'" *Id.* (quoting *Bishop Paiute Tribe v. Inyo County*, 863 F.3d 1144, 1151 (9th Cir. 2017)). This analysis "coincides squarely with standing's injury in fact" requirement. *Id.* But where "standing is primarily concerned with *who* is a proper party to litigate a particular matter, ripeness addresses *when* that litigation may occur." *Colewell v. Dep't of Health & Hum. Servs.*, 558 F.3d 1112, 1123 (9th Cir. 2009) (quotation marks omitted). The plaintiff bears the burden of establishing ripeness. *Id.* at 1121.

To the extent Abdulhussain asserts a claim for breach of the duty of fair representation with respect to the ongoing arbitration proceedings, it is not ripe.[4] It is well-established that a duty-of-fair-representation claim accrues "when the employee discovers the acts constituting the alleged violation." *Galindo v. Stoody Co.*, 793 F.2d 1502, 1509 (9th Cir. 1986) (citation modified). Thus, when a claim is based on the union's failure to file a grievance, "the cause of action generally accrues when the employee learns . . . of the union's decision" not to file. *Id.* And when the claim is based on the union's "alleged errors in presenting . . . [a] grievance before the arbitrator" the claim does not accrue until the arbitrator issues, and the employee learns of, the decision. *Id.* Thus, any claim against the Union for failure to adequately represent Abdulhussain in the ongoing arbitration is premature. *See id.*; *Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 163 (2d Cir. 1989) ("We believe that requiring a district court to consider such a suit by a plaintiff who may

---

[4] Abdulhussain's FAC only explicitly brings one claim: violation of Title VII of the Civil Rights Act. (*See* Doc. 36 at 7.) Because the bulk of Abdulhussain's factual allegations pertain to the Union's allegedly inadequate representation in arbitration, however, Abdulhussain's FAC is liberally construed to assert a claim for breach of the duty of fair representation.

- 6 -

yet prevail in the pending arbitration proceeding would be an intolerable drain on precious judicial resources."); *see also Flury v. Marriott Int'l Inc.*, 2020 WL 2467271, at *3 (D. Ariz. 2020) (dismissing a duty of fair representation claim as not ripe where the Union "requested arbitration of [the] grievance," but arbitration had "yet to occur"). Such a claim will be dismissed without prejudice.

### B. Statute of Limitations

#### 1. Judicial Notice

Generally, a district court does not consider materials not attached to the complaint at the pleading stage. *Ranch Realty*, 614 F. Supp. 2d at 987; *see also Schneider v. California Dept. of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("[A] court may not look beyond the complaint to the plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss."). But courts "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." *Trigueros v. Adams*, 658 F.3d 983, 987 (9th Cir. 2011). Filings of the EEOC, including right-to-sue letters, are thus appropriate for judicial notice. *Doria v. Yelp Inc.*, 2024 WL 1740015, at *3 (D. Ariz. 2024) (taking judicial notice of a right-to-sue letter from the EEOC and collecting cases in which courts took judicial notice of EEOC filings).

The Union requests that the Court consider Abdulhussain's right-to-sue letter, which Abdulhussain attached to his original complaint, but not to his FAC. (Doc. 41 at 5.) "[I]t is well-established that an amended complaint supersedes the original," *Valadez-Lopez v. Chertoff*, 656 F.3d 851, 855 (9th Cir. 2011) (quotation marks omitted), but here, Abdulhussain attached the right-to-sue letter to his response. (Doc. 46 at 8–11.) And given the right-to-sue letter is properly subject to judicial notice, it will be considered. *Corinthian Colls.*, 655 F.3d at 998. *See Doria*, 2024 WL 1740015, at *3.

#### 2. Title VII Legal Standard

"Title VII provides that upon dismissing a charge of discrimination, the EEOC must notify the claimant and inform [him] that [he] has ninety days to bring a civil action."

1  *Payan v. Aramark Mgmt. Servs. Ltd. P'ship*, 495 F.3d 1119, 1121 (9th Cir. 2007) (citing
2  42 U.S.C. § 2000e-5(f)(1)). "[T]his ninety-day period operates as a limitations period,"
3  and "[i]f a litigant does not file suit within ninety days of the date the EEOC dismisses a
4  claim, then the action is time-barred." *Id.* (quotation marks and citation omitted).
5  Generally, for notices sent by mail, courts "measure the start of the limitations period from
6  the date on which a right-to-sue notice letter arrived at the claimant's address of record."
7  *Id.* at 1122. In such cases, the limitations period begins when the letter is delivered,
8  "regardless of whether the claimant personally saw the right-to-sue letter" on that date. *Id.*

9  The Ninth Circuit recently considered this rule's application to "electronically
10 transmitted notices," which, the court acknowledged, "present new complications."
11 *Asuncion v. Hegseth*, __ F.4th __, 2025 WL 2536697, at *5 (9th Cir. 2025). In *Ausuncion*,
12 the claimant received an email that informed him a final agency decision had been uploaded
13 to his profile. *Id.* at *2, 6. The email provided a passphrase that would allow the claimant
14 to access the agency's decision and view the right-to-sue notice. *Id.* at *2. But the agency
15 repeatedly sent the claimant the wrong passphrase, which rendered the agency's decision,
16 and the right to sue notice, inaccessible. *Id.* at *2–3. After several inquiries, the claimant
17 eventually received a decrypted copy of the agency decision as an email attachment. *Id.* at
18 *3. Because the claimant "filed suit . . . within 90 days of receiving the accessible [final
19 agency decision] . . . his complaint was timely." *Id.* at *7. The court held that "the 90-day
20 limitation period did not begin until [the claimant] could realistically be held responsible
21 for having access to the [final agency decision] and learning what the agency had decided."
22 *Id.*

23 In reaching its decision, the *Asuncion* court found the First Circuit's reasoning in
24 *García-Gesualdo v. Honeywell Aerospace of P.R., Inc.*, 135 F.4th 10 (1st Cir. 2025),
25 persuasive. *Asuncion*, __ F.4th __, 2025 WL 2536697, at *6. There, after considering the
26 charge filed by García-Gesualdo, the EEOC emailed García-Gesualdo's lawyer. *Id.* (citing
27 *García-Gesualdo*, 135 F.4th at 13). "The body of the email stated that a 'new document'
28 had been added to García-Gesualdo's case file on the EEOC Public Portal and contained a

hyperlink that led to the portal." *Id.* Critically, "[n]either the subject line nor the body of the email described the substance of the 'new document.'" *Id.* The EEOC sent a second email, which said only that an "important" document had been uploaded and that "the EEOC had made a decision regarding García-Gesualdo's EEOC charge." *Id.* (citation modified). Due to a technical problem (of which the EEOC was aware), García-Gesualdo's lawyer was unable to access the portal. *Id.* Ultimately, "García-Gesualdo's lawyer did not access the right-to-sue letter until April 11 when the EEOC emailed him a PDF copy." *Id.*

The First Circuit concluded that neither the first nor second email "provided sufficient information to constitute notice of García-Gesualdo's right to sue." *Id.* Rather, to trigger the 90-day limitation period, "an email that does not attach the right-to-sue letter itself . . . must indicate[] without ambiguity that the EEOC has reached a final decision and that the claimant has ninety days to bring suit if they so wish." *Id.* (second alteration in original) (quoting *García-Gesualdo*, 135 F.4th at 18). An email stating only that the "EEOC made a decision" regarding the claimant's charge and instructing the claimant to "view an important document" on their EEOC portal, is not enough. *Id.* (citation modified).

### 3. Discussion

The FAC alleges that Abdulhussain filed charges with the EEOC on April 12, 2022, and received a right-to-sue letter on July 14, 2023. (Doc. 36 ¶ 7.) He filed his complaint 88-days later, on October 10, 2023. (Doc. 1.) The Union argues that, based on the right-to-sue letter, Abdulhussain was actually informed of his right to sue by email on March 17, 2023, which, if true, would render his complaint 117 days late. (Doc. 41 at 5.)

The letter Abdulhussain received on July 14 does reference an earlier email. (Doc. 36 at 9.) It states:

> The [EEOC] issued the enclosed Dismissal and Notice of Rights (Notice) in the above-referenced charge on the date reflected thereon. Specifically, on that date, EEOC sent you an email notification that EEOC had made a decision regarding [your] charge and advised you to download a copy of the decision document from the Portal. Our records indicate you have not downloaded the Notice from the Portal.

The letter then informed Abdulhussain that if he wanted to file suit, he must do so "within 90 days of the date [he] receive[d] the Notice." (*Id.*) The EEOC's "Determination and Notice of Rights" was enclosed and is dated March 17, 2023. (*Id.* at 10.) It provides the "official notice from the EEOC of the dismissal of [Abdulhussain's] charge and of [his] right to sue." (*Id.*)

The Union argues that because Abdulhussain received an email on March 17 indicating that a decision had been made and directing him to download it from the EEOC's portal, the limitations period began to run on that date regardless of whether Abdulhussain personally viewed the notice. (Doc. 41 at 5.) For his part, Abdulhussain asserts that he was "never notified in March" because he only received a "simple and short email—that a document was uploaded to [his] case," and that "simply uploading a document to a portal without any specific notice that a time sensitive document has been issued" is not enough to trigger the limitations period. (Doc. 46 at 6.)

Drawing all reasonable inferences in Abdulhussain's favor, as is required when considering a motion to dismiss, the record does not establish that Abdulhussain's claim is untimely. The EEOC's March email to Abdulhussain is nearly identical to those received by the claimant in *García-Gesualdo*: the email Abdulhussain received on March 17 simply informed him that "the EEOC had made a decision" and "advised [him] to download" the decision from the EEOC's portal, not that he had received a notice of right-to-sue. (Doc. 46 at 9.) But, as the First Circuit explained in *García-Gesualdo* and the Ninth Circuit endorsed in *Asuncion*, such a vague reference to an uploaded document does not, by itself, provide claimants with sufficient notice of a right to sue to trigger the 90-day limitations period. *García-Gesualdo*, 135 F.4th at 18 (holding that an email indicating the EEOC "has reached a decision" is insufficient to establish notice of a claimant's right to sue because there are "important, non-final EEOC decisions that would not trigger a ninety-day tolling period"); *Asuncion*, __ F.4th ____, 2025 WL 2536697, at *6 (adopting the First Circuit's reasoning and noting "the certificate of service" stating "that the inaccessible document was a final agency decision without indicating what that decision was or that [the claimant]

had 90 days to file" did not itself constitute notice (quotation marks omitted)). At this stage, it is not "beyond doubt" that Abdulhussain "can prove no set of facts that would establish the timeliness of the claim." *Supermail*, 68 F.3d at 1206. Indeed, the FAC and right-to-sue letter indicate that Abdulhussain may not have received adequate notice of his right to sue until July 14, 2023, when the EEOC sent him the right-to-sue letter by mail. *See Asuncion*, __ F.4th ____, 2025 WL 2536697, at *7. Abdulhussain's Title VII claim will therefore not be dismissed at this time.

To support its argument to the contrary, the Union cites a series of cases which have since been undermined, if not directly overruled, by *Asuncion*.[5] (*See* Doc. 41 at 5 (citing, for example, *Span v. Pinal Cnty. Cmty. Coll. Dist.*, 2024 WL 5090230 (D. Ariz. 2024); *Long v. Amazon.com Servs.*, 2024 WL 1860168 (W.D. Wash. 2024); *Holocomb v. Model T Casino Resort LLC*, 2024 WL 1619362 (D. Nev. 2024)). These decisions did not have the benefit of the *Asuncion*'s reasoning, and are therefore unpersuasive.

The Union also cites *Lax v. Mayorkas*, 20 F.4th 1178 (7th Cir. 2021). In *Lax*, the claimant received an email with a password-protected document that contained the final agency decision, a "Notice of Appeal Rights," a privacy statement, and a certificate of service attached. *Id.* at 1180–81; *see also Asuncion*, ___ F.4th ____, 2025 WL 2536697, at *5 (discussing *Lax*). The claimant read the emails, but did not use the password to decrypt the document because he contended "government security measures prevented him from accessing his work email on any non-work device." *Lax*, 20 F.4th at 1181. The Seventh Circuit held that the claimant nonetheless "received" notice of his right to appeal on the day he got the email because he "knew at that time (without needing to open the attachment) that what he had received was the final agency decision." *Id.* at 1182–83.

*Lax* is distinguishable from the facts alleged in the FAC. In *Lax*, it was clear from the face of the email that the agency had issued its final decision, notice of which triggers the ninety-day deadline. *Id.* at 1183. That is not the case here, where Abdulhussain only received an email informing him a decision had been made, but gave no indication as to

---

[5] The parties briefed the motion to dismiss before *Asuncion* was published.

- 11 -

what that decision was. (Doc. 46 at 10.) To the extent there is some tension between the Seventh Circuit's holding in *Lax* and the First Circuit's holding in *Garcia-Gesualdo*, the Ninth Circuit's endorsement of the First Circuit's reasoning is determinative. Given the similarity between *Garcia-Gesualdo* and the facts alleged by Abdulhussain, the March 17 email did not trigger the limitations period.

Abdulhussain has alleged sufficient facts to establish, at this stage, that he could not "realistically be held responsible for having access to the [final agency decision]" until he received the letter by mail from the EEOC. *Asuncion*, ___ F.4th ____, 2025 WL 2536697, at *7. Because it is not "beyond doubt" that Abdulhussain can "prove no set of facts that would establish" that his claim is timely, *Supermail*, 68 F.3d at 1207, the Union's motion to dismiss Abdulhussain's Title VII claim will be denied without prejudice to the Union raising the statute of limitations argument again at summary judgment.

Accordingly,

**IT IS ORDERED** that the Union's motion to dismiss (Doc. 41) is granted in part and denied in part, as follows: Abdulhussain's duty-of-fair-representation claim is dismissed without prejudice and his Title VII claim may proceed.

Dated this 30th day of September.

_____
Honorable Sharad H. Desai
United States District Judge